FEEDERS' SUPPLY COMPANY, RESPONDENT, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.—96 S. W. (2d) 1056.

Kansas City Court of Appeals.  June 15, 1936.

*B. L. Glover* and *Ernest P. C. Moss* for respondent.

*C. A. Magaw* and *Watson, Ess, Grover, Barnett & Whittaker* for appellant.

SHAIN, P. J.—In this action the plaintiff seeks to recover from the defendant for alleged overcharge of freight on three cars of corn shipped over defendant's railroad.

The plaintiff's petition is in three counts, there being three separate shipments.  Plaintiff for its first count plead as follows:

"For its first count against the defendant, the plaintiff states that on or about the 21st day of March, 1924, the defendant collected in freight charges the sum of $164.00 on a car of bulk corn shipped from Omaha, Nebraska, to Tonganoxie, Kansas, said car being initialed and numbered U. P. 126,521; that the freight which should have been charged and collected according to the schedule of tariffs on file with the Interstate Commerce Commission at said date amounted to $36.00 and that defendant overcharged the sum of $128.00, which plaintiff was compelled to pay and did pay.  Plain-

tiff states that it has demanded of the defendant that it refund said overcharge and that said demand has been refused.''

Plaintiff's second and third counts are like unto the first in all material matters in issue.

Defendant's answer is a general denial.

Trial was before the court without a jury and finding and judgment was for plaintiff on each of the three counts. The defendant duly appealed from the judgment.

### OPINION.

The first assignment of error is as follows:

''Under the pleadings and evidence in this case, no cause of action was shown against the Union Pacific Railroad Company on behalf of the Feeders Supply Company, and the court erred in rendering judgment against the Union Pacific Railroad Company.''

To conform to position in the lower court, we will continue to refer to respondent as plaintiff and to appellant as defendant.

The above assignment requires a careful search of the whole record and, in view of the fact that the trial was before the court without a jury, it becomes our duty to uphold the judgment if the law and facts justify. Further, in consideration of evidence, the plaintiff is entitled to the benefit of any and all inferences that can reasonably be drawn from the evidence.

The plaintiff's petition is somewhat disconnected in that, as to who was the consignor and consignee in the shipment is not disclosed, and just why plaintiff was compelled to pay is left somewhat to conjecture. However, as no direct attack is made on the pleading, we must ascertain as to whether or not the evidence bridges over the hiatus.

The facts, as we gather from the record, are as follows: The Vincent Grain Company shipped one car of corn each from Brainard, Foley and Osceola, Nebraska. The evidence discloses that the three cars were shipped under what is termed re-listing privileges. In other words, the cars were shipped into Omaha zone with privilege of re-shipment into another zone by the payment of such additional charge as when added to the local rate charged from the initial point to Omaha zone equaled the through rate from initial point to point to where reshipped. The shipper thus saved the difference between through and local freight rates.

It is shown that the local rates from the points, from where shipped to the Omaha zone, are respectively twelve and one-half cents, fourteen and fourteen and one-half cents per hundred pounds.

The three cars were shipped by the Vincent Grain Company consigned to itself at the Omaha point with reshipment privileges aforesaid. It appears that the plaintiff herein purchased from the Vincent Grain Company, for delivery at Tonganoxie, Kansas, the three

cars of corn in question. In forwarding the shipment to the plaintiff, the Vincent Grain Company shipped consigned to itself at Tonganoxie and received bills of lading, which bills of lading are negotiable instruments, which when duly endorsed conveys the ownership of the corn to the endorsee.

The bills of lading were duly endorsed and forwarded to the plaintiff. The notations on the bills of lading showed that the local charge, from initial point in Nebraska into the Omaha zone, had been paid and indicated the balance due on arrival of shipment in Tonganoxie. The balance shown due was four and one-half cents per hundred pounds, the same being the amount when added to the local charge into Omaha zone corresponded to the through rate from initial points in Nebraska to Tonganoxie.

It stands established that when the shipments arrived that the plaintiff had a right to go to defendant's agent and pay the four and one-half cents per hundred pounds charge and receive its property. However, the plantiiff sold the three cars of corn to the Fair-Hinshaw Milling Company and agreed with it to pay the freight charges from Omaha zone to Tonganoxie.

The plaintiff duly endorsed the bills of lading to the Fair-Hinshaw Company, thereby conveying Fair-Hinshaw Company all of its right to the property and all of its rights under the bills of lading.

To an understanding of the gist of this controversy, it becomes necessary to have another feature stated. It is shown by the evidence that if Omaha zone is the initial point of a shipment and the shipper so desires he can bill to Tonganoxie with re-transit right and can, by paying the local freight rate from Omaha to Tonganoxie, which is twenty and one-half cents per hundred weight, forward to some other point by the additional payment of an amount which when added to the local rate equals the through rate from Omaha to such destination.

The Fair-Hinshaw Company, after it became the owner of the corn, desired to reship same to Memphis, Tennessee. A representative of the Fair-Hinshaw Company took the bills of lading to defendant's agent and demanded that it be permitted to pay the local freight rate from Omaha to Tonganoxie, twenty and one-half cents per hundred, and be permitted privilege of re-transit to Memphis, Tennessee, by paying the forwarding re-transit charge which was three cents per hundred. In other words, it insisted that Omaha be considered the initial point of shipment and that it have re-transit right to forward as if so. This was permitted to be done by defendant's agent.

Thereafter, under the agreement that plaintiff was to pay the freight charges from Omaha to Tonganoxie, the Fair-Hinshaw Company drew sight draft on the plaintiff herein for the full amount of local freight rate of twenty and one-half cents per hundred. This

draft was paid by plaintiff. Thereby plaintiff was out sixteen cents per hundred and the Fair-Hinshaw Company was out only three cents per hundred for the haul to Memphis and the defendant received twenty-three and one-half cents per hundred, which is through rate from Omaha to Memphis.

Plaintiff made overture for recoupment from the Fair-Hinshaw Company but failed. Thereafter this suit was brought.

As a prelude to our conclusions, we set forth what we conclude the established facts under the evidence.

The initial point of shipment is clearly shown to be points designated in Nebraska. The initial shipper had transit or reshipment right from Omaha point to forwarding point. The initial shipper had the right to but one retransit. The initial shipper exercised this right in shipping from Omaha point to Tonganoxie.

This is shown by documentary evidence. The notations of the face of the bills of lading are conclusive.

The initial shipper having exercised the reshipment privilege, no reshipment privilege passed to the plaintiff by reason of the endorsement of the bills of lading to plaintiff. The plaintiff having no reshipment right could not and did not confer any such right on the Fair-Hinshaw Company by its endorsement. However, when the plaintiff sold the corn to the Fair-Hinshaw Company and endorsed the bills of lading to said company, it thereby conveyed all of its right.

The contract, from and after plaintiff sold the corn and endorsed the bills of lading, became a contract between defendant and the Fair-Hinshaw Company. The fact that plaintiff had some outside understanding with the Fair-Hinshaw Company could not restrict that company and defendant. The Fair-Hinshaw Company had full right to surrender that contract to the defendant and substitute therefor any other contract that defendant and the Fair-Hinshaw people would mutually agree to. [Carman v. Harrah, 182 Mo. App. l. c. 376; Lanitz v. King, 93 Mo. 513.]

The fact that the Fair-Hinshaw Company, in dealing with defendant, modified, changed or substituted its contract for another could not create a liability on the part of the defendant herein to the plaintiff herein. Further, such action could not effect or change any existing contract between plaintiff and the Fair-Hinshaw Company.

In so far as the rights between plaintiff and the Fair-Hinshaw Company are concerned, undoubtedly four and one-half cents per hundred pounds was the limit of plaintiff's liability to that company. However, the question of liability as between plaintiff and the Fair-Hinshaw Company is not in the case at bar.

The plaintiff in this case was not a party to the contract entered into by and between defendant and the Fair-Hinshaw Company.

The contract between defendant and the Fair-Hinshaw Company could not and did not place any greater burden on the plaintiff than was already placed on it. There is no evidence to the effect that the defendant knew of any agreement between plaintiff and the Fair-Hinshaw Company concerning freight. It may be true, and there is evidence from which we might conclude, that the defendant in making the contract with the Fair-Hinshaw Company violated a Federal Penal Statute in that the rate given discriminated in favor of Fair-Hinshaw Company. If so, the defendant subjected itself to the penalty of the statute. However, if so, it did not create any new or additional burden on plaintiff and there was nothing in said transaction that created any liability on the part of defendant to the plaintiff herein.

The above considered, we conclude that under the pleadings and the evidence, the judgment should have been for the defendant.

The defendant makes several other assignments of error and ardently urges the same as grounds of reversal. We conclude that the urged specifications are all embraced in assignment one and therefore do not prolong our opinion by further discussion of same.

The plaintiff makes a presentation of its theory of the case under several subheads and cites authority in point, if the facts bore out its theory. However, as a careful study of the evidence causes us to conclude that the evidence wholly fails to show whereby or wherein any liability whatever exists from the defendant to the plaintiff arising out of any transaction detailed in the evidence, we refrain from further comment.

Judgment reversed. All concur.